# Fay, Appellant, *v.* Lester Piano Company.

*Contract—Building contract—Approval by architect—Fraud.*

In an action to recover a balance alleged to be due on a building contract, where the contract provided that the work should be done under the direction of the architect whose decision should be conclusive, it is reversible error for the court to refuse to permit the plaintiff to show "that the architect made a mistake either in the plans or the specifications, which rendered it physically impossible to comply with both, that when that fact was called to his attention he directed the plaintiff to go on and finish that building according to the plans, to build the floor level, regardless of the old floors in the old building, which the specifications required should be on a line with the new floor; that he was directed to do that both by the representative of the owner, the defendant, and by the architect, and in pursuance of that he did it; that when he went to the architect after completing the building and told him that he came for a settlement, he was told by the architect that there could be no settlement because the owners were not satisfied with the incline, and that they would have to be satisfied; and that he then called upon the defendant company and asked them for a settlement, and that they told him there could be no settlement unless he covered the incline with steel plates," and that there was no provision in the contract for steel plates.

A mere mistake in judgment on the part of the architect is not ground for judicial interference with his decision where it is stipulated in the contract that it shall be conclusive, unless it be so gross as necessarily to imply bad faith or a failure to exercise an honest judgment; but a demand of the owner after full performance by the contractor, which the architect attempts to assist the owner in enforcing by refusing his certificate unless it is complied with, may be so unconscionable, or so utterly unreasonable and unwarranted on its face that the mind is irresistibly led to the conclusion that they are acting in collusion within the meaning of the decisions.

Argued Oct 18, 1906. Appeal, No. 117, Oct. T., 1906, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1903, No. 664, on verdict for defendant in case of Edward Fay *v.* Lester Piano Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ. Reversed.

Assumpsit to recover a balance alleged to be due on a building contract. Before Willson, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial plaintiff's attorney made the following offer:

I propose to show that the architect made a mistake either in the plans or the specifications, which rendered it physically impossible to comply with both; that when that fact was called to his attention he directed the plaintiff to go on and finish that building according to the plans, to build the floor level, regardless of the old floors in the old building, which the specifications required should be on a line with the new floor; that he was directed to do that both by the representative of the owner, the defendant, and by the architect, and in pursuance of that he did it; that when he went to the architect after completing the building and told him that he came for a settlement, he was told by the architect that there could be no settlement because the owners were not satisfied with the incline, and that they would have to be satisfied; and that he then called upon the defendant company and asked them for a settlement, and that they told him there could be no settlement unless he covered the incline with steel plates; that upon the plaintiff objecting to this, that it was not in the contract, he told them he wanted his money and was willing to make a deduction and asked if $100 would do it, whereupon Mr. Miller, president of the company, in a sneering manner, told him that $1,000 would not cover it, that it would take more money than was coming to him; and, further, that the building was completed according to the modifications as required by the architect, by the contractor, and, turned over to the defendant and is still in their use and occupation, and that the amount due under the contract to the plaintiff is a balance of $1,150. Objection; objection granted; exception. [1]

The court directed the jury to find a verdict for defendant. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2) binding instructions for defendant.

*Edmund Randall,* with him *James A. Flaherty,* for appellant, cited: Pittsburg Terra Cotta Lumber Co. v. Sharp, 190 Pa. 256; Whelen v. Boyd, 114 Pa. 228; Tilden v. Buffalo

Office Building Co., 27 App. Div. 510 (50 N. Y. Supp. 511);
Bannister v. Patty, 35 Wis. 215.

*Francis Chapman*, of *Chapman & Chapman*, with him *S. Spencer Chapman*, for appellee, cited : Payne v. Roberts, 214 Pa. 568 ; Reynolds v. Caldwell, 51 Pa. 298.

OPINION BY RICE, P. J., February 25, 1907 :

The plaintiff contracted in writing with the defendant to furnish the materials and perform the work necessary for the erection of a brick addition to the defendant's manufactory, " in strict conformity with and according to the true intent and meaning of the drawings and specifications prepared by the architects." It appears from the plaintiff's statement of claim and his offer of testimony that he alleges : that when the construction of the second-story floor was reached it was discovered that, owing to the settling of the floors of the old building in places, it was physically impossible to make the floor of the new building level throughout, as required by the working plans furnished by the architects, and at the same time have it on an exact line or level with the floors of the old building, as required by the specifications ; that he was directed by the architects and the defendant to finish the building according to the plans, regardless of the floors in the old building, which he did, connecting the floors at the openings in the wall by inclines ; that with this modification he completed the building in accordance with the contract ; and of the contract price there remains unpaid $1,150. Referring now to the contract, we find the provisions : that the work was to be done " under the direction and to the satisfaction " of the architects ; that " the architects' decision shall be conclusive as to the true purport and meaning of the drawings and specifications ; " that the plaintiff should " comply with the directions of the architects as to the time and manner of performing the work, the precautions to be taken, and the quality of material and workmanship involved ; " that the architects should examine the monthly statements the plaintiff was required to furnish and " approve the same, in whole or part, as in their judgment is deemed to be a fair valuation of the said work and materials, less ten per cent thereof ; " which should be retained " until the satisfactory

completion and final approval of the work by the architects; " and that, " No certificate given or payment made under this contract, except the final certificate and final payment, shall be evidence of the performance of this contract, in whole or part, and no payment shall be considered to be an acceptance of defective work or improper materials."

On the trial, the plaintiff put in evidence the contract, plan and specifications, and was proceeding to show performance by the testimony of a witness, when the defendant's counsel objected that the proper way of proving performance of the contract was by producing the architects' certificate, and if the plaintiff could not produce it he was bound to account for its absence. The plaintiff then made the offer which is quoted in the first assignment, to which the defendant's counsel objected as follows: " I object to the offer because in the statement of claim it is alleged that the plaintiff has substantially completed the contract and that he is unable to furnish the architects' certificate, which by the contract itself is made evidence of performance, by reason of its being wrongfully withheld from him; and because the certificate is not produced or its absence explained by showing combination or collusion justifying going on in its absence." The court sustained the objection, and as the effect of this ruling was to prevent the plaintiff from proving performance, binding instructions for the defendant logically followed. Another preliminary matter to be noticed is that it is alleged in the plaintiff's statement of claim that his failure to furnish a certificate from the architects of their approval of the work was owing to the fact that it was wrongfully withheld from him; therefore no objection to the offer upon the ground that proof of that fact was not admissible under the pleadings could be sustained.

We need not take up time in considering whether the contract contemplated that the final approval of the work by the architects should be in writing. We assume for the purpose of the present discussion that this is what was meant, and therefore that the plaintiff could not recover unless sufficient excuse or reason for not producing it was shown. What would be such sufficient reason or excuse has been considered in Whelen v. Boyd, 114 Pa. 228 and Pittsburg Terra Cotta Lumber Co. v. Sharpe, 190 Pa. 256, and the recent case of Payne v. Roberts,

214 Pa. 568 was decided on a principle which is to be kept in view in the determination of the question before us. In the first case it was claimed that the certificate of the defendant's superintendent that the work was well and properly done according to the contract was a prerequisite to recovery. Without deciding this point, the court held that even if it was a prerequisite, the fact that the superintendent refused the certificate, not because he did not think it was deserved, but because he had been ordered by the defendant not to give it, was a sufficient excuse. The testimony which was held sufficient to warrant a jury to infer the fact was, that in a conversation the plaintiff had with the superintendent the latter admitted the completion of the work, but refused to give the certificate because he had been ordered not to do so by the defendant. In the second case it was held, that the question whether the contractor had sufficient reason or excuse for not producing the architect's certificate that the work had been completed to his satisfaction, as stipulated in the contract, was for the jury, there being evidence tending to show that the work was done in all particulars as called for by the contract, that it was completed within the stipulated time, and that the architect refused to give the final certificate when requested to do so, and this being followed by evidence, " that the architect, in collusion with the defendant, wrongfully withheld it." The evidence recited in the charge of the trial judge, upon which the question of the wrongful withholding of the certificate was submitted to the jury, did not more clearly show collusion than does the evidence in the present case. Speaking of the purpose and effect of such provision in a building contract, Justice DEAN said : " We fear appellant misapprehends the purpose of this provision ; evidently it was inserted to protect the owner against any unjust or unfounded claim by the contractor, and in that view of it, it was a reasonable provision ; but if the contractor honestly performed its covenants, it was not intended to protect the owner from an honest payment of the price by a capricious or fraudulent withholding of the certificate. Nor would the law tolerate such wresting from its purpose of this provision." In the third case it was held, that a clause providing that if work done or materials furnished should be unsatisfactory to the architects, the contractor would, on notice, remove such work and materials,

and supply other satisfactory to the architects, and in case of default, the owner, after ten days' notice to the contractor, could provide other workmen and materials to complete the work, should be enforced in the absence of fraud or collusion between the architects and owner, and was not affected by an arbitration clause recited in the opinion of the court. But in the course of the discussion Mr. Justice STEWART, who rendered the opinion of the court said: "Notwithstanding all we have said, however, and wholly independent of the reference clause, the plaintiffs would still have the right to maintain an action on the contract, if they could show that the dissatisfaction expressed by the architects, was brought about through collusion between the latter and the owner, in order to disturb and defeat the plaintiffs in the lawful exercise of their work." Then after reviewing the evidence he continued : "Considered as a whole, we fail to see anything in it that would warrant even reasonable supposition of bad faith on the part of the architects. Without this on their part, neither persistent opposition by the owner to the contractors, nor his repeated and continued remonstrances and arguments addressed to the architects, could establish the combination and collusion necessary to avoid the finding of the latter."

As this case is now presented, we must assume that the plaintiff is able to prove full performance of the contract in accordance with the plans and specifications as modified by the defendant and the architects, and that when he went to the architect after completing the building and told him that he came for a settlement, he was told by the architect "that there could be no settlement because the owners were not satisfied with the incline, and that they would have to be satisfied;" further, that the reason which the defendant gave for refusing settlement was, not that there had not been "satisfactory completion and final approval of the work by the architects," but that the inclines were not covered with steel plates. But it is not pretended that there is anything in the contract, the plans or the original specifications which required this to be done; nor, so far as now appears, was it required by the specifications as modified. On the contrary, the work was done precisely as the plaintiff was directed to do it, and if the offer shows all that occurred, it was not claimed otherwise by the defendant

or the architects.   A mere mistake in judgment on the part of the architect is not ground for judicial interference with his decision where it is stipulated in the contract that it shall be conclusive, unless it be so gross as necessarily to imply bad faith or a failure to exercise an honest judgment.   And, without deciding the point, it may be conceded for present purposes that although the architect is the employee of the owner proof of even such gross dereliction on his part, standing alone, would not dispense with the production of the certificate of approval which the contract calls for, and enable the contractor to maintain a suit upon the contract.   But a demand of the owner after full performance by the contractor, which the architect attempts to assist the owner in enforcing by refusing his certificate unless it is complied with, may be so unconscionable, or so utterly unreasonable and unwarranted on its face, that the mind is irresistibly led to the conclusion that they are acting in collusion within the meaning of the decisions. Collusion is defined to be a secret agreement for a wrongful purpose; fraudulent co-operation; a secret arrangement between persons to defraud another, or to obtain an unlawful object, through legal proceedings.   From the very nature of the act it would be impossible in very many if not in most cases to establish the existence of such secret agreement by direct and positive testimony.   Reliance must often be placed, and may very safely be placed, upon circumstances which lead to the conclusion that apparently isolated acts are truly parts of a common whole; that they have sprung from a common object, and have in view a common end.   This case may present a very different aspect when the facts are fully developed, but assuming the facts to be as stated in the plaintiff's offer, a jury could find that the defendant refused to pay the plaintiff the amount that was due him, not because he had not fully performed his part of the contract, but because he would not do something he was not under obligation to do, and that the architect refused to give the certificate not in the exercise of his independent judgment upon the facts, but because the plaintiff would not comply with this unwarranted demand of the defendant.   We are of opinion that the evidence should have been admitted, and if it came up to the offer and the effect of it was not destroyed by other testimony,

should have been submitted to the jury with instructions, that if they should find that the architects, in collusion with the defendant, wrongfully withheld the certificate, the nonproduction of it would not preclude recovery by the defendant.

Judgment reversed and venire facias de novo awarded.